In re William L. MAITLAND and Stephany T. Maitland, Debtors.

William L. MAITLAND and Stephany T. Maitland, Plaintiffs,

v.

CENTRAL FIDELITY BANK, et al., Defendants.

Bankruptcy No. 85–00047–R.
Adv. No. 85–0408–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 5, 1986.

James R. Sheeran, Richmond, Va., for plaintiffs.

James J. Burns, Richmond, Va., for Central Fidelity Bank.

Robert E. Hyman, Richmond, Va., for Citizens Bank and Trust.

J. Stephen Buis, Richmond, Va., for Southern States Cooperative.

· S. David Schiller, Asst. U.S. Atty., Richmond, Va., for Farmers Home Administration.

1. Bankruptcy Rule 7001 relates to a proceeding to determine the validity, extent, and priority of

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the complaint of the plaintiffs, William L. Maitland and Stephany T. Maitland ("Maitlands"), the debtors in the above-styled case, to determine, pursuant to 11 U.S.C. § 506(a), the extent of the defendants' liens against their real estate, the amount of the allowed secured claims, and the amount of the unsecured portions thereof. In addition, to the extent that a lien secures an undersecured claim against their property, the Maitlands seek to void the lien pursuant to 11 U.S.C. § 506(d).

This matter was originally filed as an adversary proceeding under 11 U.S.C. § 522(f) and Bankruptcy Rule 7001 to determine the validity, extent, and priority of claims.[1] However, upon the convening of a pretrial conference on December 4, 1985, it became apparent that the nature of the relief sought was pursuant to 11 U.S.C. § 506(d) and not § 522(f). Section 522(f) of the Bankruptcy Code only allows a debtor to avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under state law, provided that lien fits within the categories delineated under § 522(f).

The debtor was granted leave to file an amended complaint, and the Court requested that briefs be filed on the issue of the availability of § 506(d) as a means of voiding a lien against property of the debtor. In addition, the parties were instructed to file briefs on the impact of abandonment of the property in question as an asset of the estate. As the briefs have been filed, the Court makes the following findings and conclusions of law.

## STATEMENT OF THE CASE

The Maitlands filed a petition for relief under Chapter 11 of Title 11 of the United

*liens.*

States Code on January 11, 1985. However, on the Maitlands' own motion and by order of this Court dated September 24, 1985, the case was converted to one under Chapter 7 of Title 11. The instant adversary proceeding was filed on October 25, 1985, and Central Fidelity Bank, Citizens Bank and Trust Company, Southern States Southside Cooperative, and the United States of America, on behalf of the Farmers Home Administration, defendants herein, filed answers in response to the Maitlands' complaint.

The Maitlands assert that at the time of the filing of their petition, they were the owners of four parcels of real estate located in Dinwiddie County, Virginia. The parcels consist of one parcel of 5 acres, known as the "residence tract," one tract of two parcels of 174 acres and 106.5 acres, and one parcel of 151.41 acres. The Maitlands further assert the property was appraised in February of 1985 as having a total value of $231,500; however, as the "residence tract" has been tentatively valued at $60,-000, the Maitlands do not believe it to have been included in the appraisal.

From the complaint it appears that Central Fidelity Bank ("CFB") allegedly holds a promissory note secured by a deed of trust on the "residence tract" with a balance due of approximately $7,000. CFB, in its answer, admits the existence of its deed of trust; however, it asserts that the balance due is in excess of $8,000. The "residence tract" is apparently the only security for that note. Citizens Bank and Trust ("Citizens") has, according to the Maitlands, a deed of trust on all parcels of real estate securing the repayment of an outstanding promissory note with an outstanding balance of approximately $296,000. Citizens asserts that the obligation is slightly higher.

In addition, the Maitlands assert that the Farmers Home Administration ("FHA") has a deed of trust in the amount of $400,-850 on all the real property; however, the FHA has also disputed the amount of its outstanding balance. Lastly, the Maitlands allege that there are two judgment liens against their property, one in favor of Southern States Southside Cooperative, Inc. in the amount of $1,762.43 plus interest, and one in favor of E.E. Vaughan & Son, Inc. in the amount of $24,844.84, plus interest.

The FHA filed its claim on April 12, 1985, and the Maitlands filed claims on behalf of all other defendants at the time of filing their brief in support of the relief sought. The Maitlands state in their brief that the Chapter 7 trustee abandoned the above described real estate because its value did not exceed the amount of the liens asserted against the property. As a result, the Maitlands have sought to declare the undersecured portions of the defendant creditors' claims void pursuant to § 506(d) of the Bankruptcy Code.

The issues presented in this proceeding are (1) whether the Maitlands may use § 506(a) to determine the extent of allowed secured claims against their real property and (2) whether they may use § 506(d) to void liens against the property to the extent the liens are undersecured.

## CONCLUSIONS OF LAW

Section 506(a) of the Bankruptcy Code provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under § 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim....

11 U.S.C. § 506(a). The difficulty this section presents is that § 506(a) seems limited in its application to "property in which the estate has an interest," and it is clear that if the property never has been property of the estate or if property has been abandoned by the trustee as an asset of the estate, the estate does not have an interest

which would allow for a § 506(a) determination. In contrast, § 506(d) provides that "to the extent that a lien secures a *claim against the debtor* that is not an allowed secured claim, such lien is void...." 11 U.S.C. § 506(d). (Emphasis added).[2]

The Maitlands have asserted in their brief that § 506(a) and § 506(d) are not mutually dependent, and that abandonment of property by the trustee is a necessary prerequisite to an action under § 506(d). However, § 506(d) does not address property of the debtor, which the property would be only after abandonment by the trustee or exemption by the debtor, but, rather, § 506(d) addresses a *claim* against the debtor. Without the words "against the debtor" in § 506(d), that subsection would give the appearance of voiding liens against properties in which the debtor has no interest. For example, the debtor may have an obligation owed to a creditor secured by property of a third party, and while a valid security interest against that party's interest may exist, it is not an allowed secured claim against the debtor, hence the necessity of the words "against the debtor" in § 506(d). Section 506(d) necessarily becomes dependent on § 506(a) in order to carry out the intent of the statute, for without the words "against the debtor" an independent reading of § 506(d) would void the lien against the non-debtor third party. Such an independent reading would lead to the conclusion that a lien is void if on property of a non-debtor third party who has no obligation to the creditor because, although, it does secure a claim against the debtor it is not an allowed secured claim. One must refer to § 506(a) to find that an allowed secured claim is a secured claim only to the extent of the value of such secured creditor's interest in the *estate's interest* in such property.

One of the first cases to interpret § 506 was *In re Harvey*, 3 B.R. 608 (Bankr.M.D.

Fla.1980). In *Harvey*, a secured creditor sought a determination of its secured status under § 506(a) in order to obtain relief from the automatic stay of 11 U.S.C. § 362. However, the property in question was released to the debtor, either by abandonment or exemption, and the court considered the impact of § 506(a) on property which was no longer property of the estate.

Specifically, the court held that:

While the legislative history fails to shed any light on whether or not the phrase "property in which the estate has an interest" was intended to limit the valuation process to non-exempt property, it indicates that it was intended to deal with properties of the estate which are being administered under the Code and not to deal with properties which were released as exempt or abandoned. While it is true that, under § 541 of the Code, everything in which the debtor has a legal or equitable interest as of the commencement of the case forms part of the estate, § 506 uses the language "property in which the estate has an interest" rather than "property of the estate."

*Harvey*, 3 B.R. at 609.

*Harvey* concluded its analysis of § 506(a) by stating that the section was an improper vehicle for relief from the automatic stay and that secured creditors should proceed directly against the collateral once the property is released from the estate and make a determination whether or not to look to the collateral as full security for the debt or liquidate the same. Should a deficiency exist the creditor could assert an unsecured claim. *Id.* As *Harvey* states, § 506(a) is intended to value claims against property which is going to be administered under the Code, not property abandoned or released.

Although § 506(a) may be used by the debtor to determine the amount he must

---

**2.** 11 U.S.C. § 506(d). To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

pay to a secured creditor to redeem personal property under 11 U.S.C. § 722, the intention of § 506(a) is to assist in the determination and distribution of funds of the estate to secured and unsecured creditors, to determine the amount of a secured claim for purposes of confirmation of a plan of reorganization under Chapter 11 or Chapter 13, to determine the amount of adequate protection to which a creditor is entitled under § 361 and § 363(e) if cash collateral is to be used by the debtor under § 363(c)(2), or to determine the amount of the debtor's exemptions in encumbered property. Butler, "Valuation of Secured Claims under 11 U.S.C. § 506(a)," 89 *Com. L.J.* 342, 345 (1984).

■ By the same token, a creditor may obtain a valuation hearing under § 506(a) "to obtain relief from the stay or to establish that attorneys fees, costs or late charges should be included as part of its secured claim under § 506(b)." *Id.* Indeed, § 506(b) is consistent with the overall statutory scheme of § 506, *i.e.*, determination of the secured status of claims for administration, as § 506(b) also deals with allowed claims and the extent to which they will be paid through the estate. Section 506(b) provides to the extent that an allowed secured claim is for less than the value of the property by which it is secured, interest on the claim and any reasonable fees, costs, or charges are allowable. If the property were abandoned, a secured creditor could simply proceed against the property and assert an unsecured claim against the estate for debts left unsatisfied after a foreclosure sale pursuant to the security documents. Section 506(a) does not contemplate determining the extent to which a claim is allowed for lien avoidance purposes under § 506(d) if the property has been abandoned. If the property is not to be administered as an asset of the estate for liquidation, or for retention by the debtor-in-possession in a Chapter 11 reorganization or a Chapter 13 wage-earner plan, then determination as to the extent a claim is an allowed secured claim serves no statutory purpose, other than as specifically provided under § 722. *See infra*, at pg. 134.

■ Thus, the question is what is the function of § 506(d)? This Court is of the opinion that § 506(d) is intended merely to facilitate the sale of collateral by the trustee or the debtor-in-possession in order to extinguish the entire lien even though the sale is at a price insufficient to satisfy the lien in full. *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y.1983). The trustee might also use § 506(d) if a first mortgage is avoided as a preference under § 547 and then preserved for the benefit of the estate under § 551. As the estate would be deemed the holder of the first mortgage, any subsequent mortgages could be avoided in the liquidation of the property and those creditors would have unsecured claims in distribution of the estate. *Id.* at 308–309. *In re Gibbs*, 44 B.R. 475, 478 n. 5 (Bankr.D.Minn.1984).

■ Although the Court is cognizant of *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa. 1981), and the cases that have followed its lead in holding that § 506(d) provides for the voiding of a lien to the extent it exceeds the value of the collateral, the *Mahaner* court appears to be the correct interpretation of the law. If *Tanner* and its progeny are correct, then § 722 would be effectively written out of the Bankruptcy Code. Section 722 provides that a debtor may "... redeem *tangible personal property* intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under § 522 of this title or has been abandoned under § 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien." (Emphasis added). 11 U.S.C. § 722.

Section 722, however, does not allow the debtor to redeem *real property* by paying the holder of an allowed claim secured by the abandoned or exempted property the secured amount of the claim. Such a result would occur if the debtor could pay the secured creditor with a lien against the debtor's abandoned or exempted real estate an amount equal to the value of the proper-

ty and then, under § 506(d), void the lien to the extent it is undersecured. In light of the exclusion of real property in § 722, and its express limitation to specific tangible personal property, it is obvious that Congress did not intend to permit a debtor to redeem his real property through the use of § 506(d). *In re Cordes,* 37 B.R. 582, 584 (Bankr.C.D.Ca.1984). For instance, if in the case *sub judice* the creditor was deemed to be secured to the extent of 50% of its indebtedness, the debtor's interpretation of § 506(d) would make that creditor only 50% secured and its debt as a secured obligation would be reduced. The debtor could then insist upon a payment to the creditor of 50% of the total indebtedness and he could then demand that the property be released from the lien. Alternatively, he could perhaps reduce his future amortized payments to 50% of the initial balance due and then assert that the unsecured portion of the debt, *i.e.* the remaining 50% portion, would then have to participate in any dividend from liquidated assets. None of this is provided for under § 722 as to the debtor's real estate.

In addition, the *Mahaner* and *Cordes* courts point out that following the *Tanner* theory would lure debtors away from Chapter 13, because § 506(d) would allow debtors to redeem their principal residence in a Chapter 7 liquidation, and possibly void the lien of a second mortgage holder. Under 11 U.S.C. § 1322(b)(2), the rights of a holder of a claim secured only by the debtor's principal residence cannot be modified. *Cordes,* 37 B.R. at 584; *Mahaner,* 34 B.R. at 308. Given the recent revisions to the Bankruptcy Code under the Bankruptcy Amendments and Judicial Reform Act of 1984, which evidence Congress' intent to steer debtors who are eligible for Chapter 13 away from Chapter 7, redemption of the debtor's principal residence in a Chapter 7 would clearly be inconsistent with Congressional intent.

For the foregoing reasons, the Court finds that the Maitlands should not be able to use § 506(a) to determine the extent of allowed secured claims against their real property, nor use § 506(d) to void liens against the property to the extent they are undersecured.

An appropriate Order will issue.