**In the Matter of Clyde HOYT, Sherry Hoyt, Debtors.**

**Clyde E. HOYT, Sherry L. Hoyt, Plaintiffs,**

**v.**

**UNITED STATES of America acting Through the SMALL BUSINESS ADMINISTRATION, Defendant.**

**Bankruptcy No. 88–1042–W J. Adv. No. 88–0119.**

United States Bankruptcy Court, S.D. Iowa.

Dec. 1, 1988.

Charles L. Smith, Council Bluffs, Iowa, for debtors.

C.R. Hannan, Chapter 7 Trustee, Council Bluffs, Iowa.

Kevin R. Query, Asst. U.S. Atty., Des Moines, Iowa, for U.S.A.

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Chief Judge.

The United States of America on behalf of the Small Business Administration (SBA) filed a motion to dismiss the above captioned adversary proceeding on July 14, 1988. In their complaint to determine secured status, the Hoyts ask the court to determine the extent of the SBA's secured claim and to order the release of unsecured claims or to permit the curing of defaults on liens which are adequately secured. The SBA challenges the ability of the Hoyts to avoid part of its lien on certain real estate under 11 U.S.C. section 506(d).

The motion to dismiss was discussed during the July 19, 1988 telephonic hearing on the SBA's motion for relief from stay which had been filed in the Chapter 7 case and resisted by the debtors. Charles L. Smith appeared on behalf of the debtors and Kevin R. Query, Assistant U.S. Attorney, appeared on behalf of the SBA. At the close of the hearing, the court directed the parties to submit stipulated facts and briefs on both motions.

The motion to dismiss and the motion for relief from stay were fully submitted on September 6, 1988.

## FACTS

The parties presented the following stipulation of facts:

1. Clyde and Sherry Hoyt (hereinafter "the Hoyts") filed for relief under Chapter 7 of the Bankruptcy Code on May 11, 1988.

2. The Hoyts disclosed in their schedules filed at the initiation of this case that they hold an interest in 120 acres of real estate in Adams County, Iowa, subject to a purchase contract from Edward Hoyt and a second mortgage to the Small Business Administration. The Hoyts list in their schedules a market value for the real estate of $32,000.00.

3. Small Business Administration filed a proof of claim in this case on June 13, 1988, evidencing its claim against the Hoyts in the total sum of $66,226.15.

4. There remains pending subject to the automatic stay of the bankruptcy case, a civil foreclosure action initiated by the Small Business Administration on December 29, 1987 (Civil No. 87–1024–E), respecting the interest claimed in the 120 acre tract of real estate. Clyde and Sherry Hoyt, Edward and Ruth Hoyt, and Adams County, Iowa, are named as defendants in the pending civil action.

5. The Hoyts do not maintain a claim against the real estate under their schedule of exemptions filed with the Bankruptcy Court.

6. Counsel for the debtors acknowledged at the preliminary hearing held on July 19, 1988, on the Motion for Relief from Stay in this case that there is no equity in the 120 acre tract of real estate for the benefit of unsecured creditors in this case.

7. The parties to this action do not dispute the amount of outstanding real estate taxes owed against the subject tract of real estate.

8. The parties to this action are unable to agree on a joint appraisal of the real estate and would submit independent appraisals each has obtained respecting the value of the subject tract of real estate.

## DISCUSSION

At the outset the court observes that the discharge was entered in the Chapter 7 case on August 30, 1988 but the court file does not contain any evidence of abandonment of the property in issue by the trustee. Additionally, the Hoyts have not

claimed the real estate as exempt property. Clearly, the property is still property of the estate and the automatic stay remains in effect as to any act against that property. 11 U.S.C. § 362(c)(1). This posture of the case poses a problem similar to that discussed in *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988):

> There is no evidence before the Court as to whether this real property has been abandoned to the debtors or whether the trustee intends to do so. However, this adversary proceeding only states a cause of action if the property is abandoned. Otherwise, the debtors would have no standing to assert their claim to avoidance and redemption and the property would be liquidated by the Chapter 7 trustee, making these matters moot. Although some courts have allowed Chapter 7 debtors to avoid liens pursuant to § 506(d) even though the property had not been abandoned to them, *see, e.g., In re Crouch*, 76 B.R. 91 (Bkrtcy.W.D.Va. 1987), in this case the debtors ask the court to authorize them to pay the fair market value of the property to the secured creditor and then take title to the property free and clear of liens. That request can only make analytical sense in conjunction with an abandonment from the trustee, either pursuant to § 554(a) or (b) (upon the filing and granting of an appropriate motion for abandonment), or as a result of the operation of § 554(c) (deeming property "not otherwise administered" to be abandoned at the time of the closing of the case). Although the debtors have claimed a homestead exemption in the Oak City property, it is clear from this proceeding that they have no interest in the property by virtue of that claim since there is no equity to which the exemption might attach. *See, Wilson v. General Motors Acceptance Corporation (In re McCoy)*, 643 F.2d 684 (10th Cir.1981); *Styler v. Local Loan Financial Services (In re Lanctot)*, 6 B.R. 576 (Bkrtcy.D.Utah 1980). Moreover, the trustee of this estate has neither been made a party to this action, nor has he been served with any of the pleadings. Therefore, for the purpose of this opinion, the Court will assume that the real property has been or will be abandoned to the debtors.

*Id.* at 677, n. 1. Like the *Dewsnup* court, this court will assume for the purpose of overcoming any standing issue in order to reach the merits that the trustee has or will abandon the property in issue.

In the adversary action, the Hoyts seek to extinguish any claim the SBA may have against the property that exceeds the actual value of the property. They rely on 11 U.S.C. section 506(d) which provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
>
> > (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
> >
> > (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

This provision must be read in conjunction with section 506(a) which states in part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Assuming that the value of the property in question is $32,000.00 as set forth in the Hoyts' schedules and that the amount of the superior lienor's claim is $16,000.00 as estimated at the time of the hearing, the SBA's secured claim would equal approximately $16,000.00 and its unsecured claim would be over $50,000.00.

The courts that have addressed issues identical or similar to that presented in this case have divided into two camps. The line

of cases beginning with *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1982) holds that Chapter 7 debtors can avoid mortgage liens under section 506(d). In *Tanner*, the debtor's $20,000.00 home was encumbered by three mortgages. The first two exhausted the value of the home leaving the third mortgagee's claim entirely unsecured. The debtor asked the court to declare the third mortgagee's lien void under section 506(d).

The mortgagee argued that "lien" as used in section 506(d) did not refer to a mortgage lien. Citing the broad definition of lien found in 11 U.S.C. section 101(28), the court rejected this argument. The court reasoned that Congress knew how to designate special kinds of liens, such as judicial liens or statutory liens, when it so desired. The *Tanner* court observed that section 506 read in its entirety, the overall scheme of the Code and the relevant legislative history supported its conclusion.

The *Tanner* court equated permitting Chapter 7 debtors to avoid liens under section 506(d) with effecting the "fresh start" policies of the Code. The court considered appreciation of property or an increase of equity ownership to be forms of after acquired property that would be free from the claims of prepetition creditors. Additionally, the court found that the effect of lien avoidance on a creditor in bankruptcy is no different from the effect of a forced sale out of bankruptcy. That is, in both instances, the undersecured lienors would receive nothing for the unsecured portion of their claims.

Cases that have followed the *Tanner* rationale in allowing section 506(d) lien avoidance include: *Matter of Vigne*, 18 B.R. 946 (Bankr.W.D.Penn.1982); *Brace v. State Farm Mut. Ins.*, 33 B.R. 91 (Bankr.S.D.Ohio 1983); *In re Gibbs*, 44 B.R. 475 (Bankr.N.D.Ill.1984); *In re Lyons*, 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Cleveringa*, 52 B.R. 56 (Bankr.N.D.Iowa 1985); *In re Lindsey*, 64 B.R. 19 (Bankr.C.D.Ill.1986); *In re Worrell*, 67 B.R. 16 (C.D.Ill.1986); *In*

*re O'Leary*, 75 B.R. 881 (Bankr.D.Or.1987); *In re Crouch*, 76 B.R. 91 (Bankr.W.D.Va. 1987); *In re Garnett*, 88 B.R. 123 (Bankr. W.D.Ky.1988).[1]

The second line of cases starts with *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y. 1983). The property in question in that case was valued at $87,500.00. A first mortgage consumed $41,646.82 of the property. The remaining value partially secured an obligation of $135,248.52. The debtors sought a continuation of the automatic stay to pursue a section 506(d) action with the intention of redeeming the property at a price that reflected its value.

In reaching the conclusion that section 506 could not be used to strip down liens, the *Mahaner* court first found that allowing mortgage lien avoidance under section 506 would render meaningless 11 U.S.C. section 722 which provides for the redemption of certain personal property. Second, the court found that allowing lien avoidance in Chapter 7 would permit debtors to receive more in Chapter 7 than in Chapters 11 and 13 contrary to Congress' intent of encouraging repayment plans rather than liquidation. The court explained that 11 U.S.C. section 1322(b)(2) prevents Chapter 13 debtors from modifying mortgages on their principal residence if the mortgagees hold no other security, and 11 U.S.C. section 1111(b)(2) allows Chapter 11 secured creditors to elect to retain the full amount of their liens. Third, the court ruled that mortgage lien avoidance in Chapter 7 would deprive the creditor of the right to enjoy the benefits of any appreciation and, therefore, was tantamount to an unconstitutional deprivation of property without just compensation.

Other bankruptcy courts that have reached the *Mahaner* conclusion include: *In re Cordes*, 37 B.R. 582 (Bankr.C.D.Ca. 1984); *In re Sloan*, 56 B.R. 726 (Bankr.D. Colo.1986); *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986); *In re Gaglia*, 76 B.R. 82 (Bankr.W.D.Pa.1987); *In re Smith*, 79

---

**1.** In an unpublished decision, former U.S. Bankruptcy Judge Richard Stageman found the *Tanner* analysis persuasive and allowed the Chapter 7 debtors to use section 506(d) to avoid liens on real estate to the extent the liens were unsecured. *Matter of Mackey*, No. 85–1571–D, slip op. (Bankr.S.D.Iowa Dec. 27, 1985).

B.R. 650 (Bankr.D.Md.1987); and *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988).

The court in *Maitland*, 61 B.R. at 134 found that section 506 is not operative in cases where the estate has no interest in the property:

> Section 506(a) does not contemplate determining the extent to which a claim is allowed for lien avoidance purposes under § 506(d) if the property has been abandoned. If the property is not to be administered as an asset of the estate for liquidation, or for retention by the debtor-in-possession in a Chapter 11 reorganization or a Chapter 13 wage-earner plan, then determination as to the extent a claim is an allowed secured claim serves no statutory purpose, other than as specifically provided under § 722.

According to the *Maitland* court, section 506(d) serves only to facilitate the sale of collateral by a trustee or debtor-in-possession.

The bankruptcy court in *Gaglia*, 76 B.R. at 84, relied upon *Maitland* and additionally pointed out that 11 U.S.C. section 362(d)(2) effectively would be written out of the Code if Chapter 7 debtors were allowed to pursue complaints to avoid mortgage liens when a creditor could otherwise establish a conclusive case for relief from the automatic stay. The court emphasized that section 362(d)(2) specifically requires the court to grant relief from the stay of an act against property if the debtor has no equity in the property and the property is not necessary to an effective reorganization. The court observed:

> Once the creditor establishes that there is no equity in the property (a fact which will be evident from the debtors' move to void the undersecured portion of the creditor's lien) and that the property is not necessary to an effective reorganization (which, in a chapter 7, is also evident), the court has no discretion to lift or not lift the automatic stay. The court must lift the automatic stay so that the secured creditor may pursue his remedy against the liened property for whatever benefit he may perceive.

. . . .

Under the superseded Bankruptcy Act, there was no provision for voiding a mortgage, in whole or in part. Thus, the interpretation of § 506 urged by debtors would constitute a major change in the rights of mortgage holders. The institution of the automatic stay in the Code as a statutory rule, impinged on the right of the mortgagee to foreclose, but that was immediately balanced by § 362(d), providing for relief from the automatic stay in the circumstances here present, and providing under § 362(e) for automatic relief from the stay if the court does not act within 30 days. This careful tailoring of procedural safeguards to protect any equity of the debtor, and yet not delay the foreclosure rights of the mortgagee, does not indicate a Congressional intent to allow avoidance of the mortgage or any part thereof. This statutory scheme in fact recognizes the right of the undersecured mortgage holder to foreclose.

*Id.* at 84–85.

In *In re Dewsnup*, 87 B.R. at 682, the bankruptcy court expanded upon the "interest of the estate" analysis articulated in *Maitland* by setting forth the procedural context in which section 506 must be viewed in a Chapter 7 case:

> In a case under Chapter 7, a trustee is charged with the duty to 'collect and reduce to money the property of the estate.' § 704(1). Distributions are then made to secured creditors pursuant to § 725, and unsecured creditors pursuant to the priority scheme set forth in §§ 507 and 726. In addition to these provisions, § 522 allows an individual debtor to exempt certain property from the property of the estate and § 554 allows the trustee to abandon property which is burdensome to the estate or that is of inconsequential value. The resulting effect of the latter two provisions in a Chapter 7 case is to exclude certain property from the liquidation and distribution process. It is within this scheme of allowance and distribution that § 506(a) provides that '[a]n allowed claim of a creditor secured by a lien on property *in which the estate*

*has an interest* ... is a secured claim to the extent of the value of such creditor's interest *in the estate's interest in such property,* ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim'. (Emphasis in original.)

The *Dewsnup* court found it inconceivable that Congress would create an avoidance power in Chapter 7 debtors when the property in question would not be administered through the bankruptcy estate. The court pointed out that the avoidance power of section 506(d) was based on the dichotomy of the protection and distribution of allowed secured and unsecured claims which was intended to assist in the administration and distribution of the bankruptcy estate.

With respect to the "fresh start" policy concerns expressed in the *Tanner* line of cases, the *Dewsnup* court responded in part:

The approach suggested by the Court does not impede the debtors' fresh start. They can give up their interest in the property and obtain their fresh start. Moreover, any deficiency claim is clearly within the scope of the debtors' discharge. However, in this case the debtors are attempting to get more than a fresh start. The debtors want to keep their property and be entitled to the future appreciation in the value of the real property without paying the full amount of the obligation secured by the lien. That is something to which they would not be entitled at a forced sale of the property. Absent abandonment, it is also something they would not be entitled to in a bankruptcy proceeding. Pursuant to § 551, any interest or value arising out of an avoidance under § 506(d) would be preserved for the benefit of the estate and creditors with claims against it.

*Id.* at 683.

Had the trustee in the instant case formally abandoned the property from the estate at the time of the hearing on the motion for relief from stay, the motion would have been moot and the SBA could have proceeded with its pending civil foreclosure action by operation of section 362(c). The court can glean no reason why the property has not been abandoned since the claims against it far exceed the value placed upon it in the Hoyts' schedules. Clearly, the estate does not have an interest in the property.

At the time of the hearing, the court expressed concern over the obvious immediate merit of the SBA's motion for relief from stay and the lack of merit in the Hoyts' resistance. In essence, the Hoyts asked that the stay remain in effect so that they could pursue their adversary proceeding which had been commenced before the motion for relief from stay was filed. Given the pending motion to dismiss which afforded the court an opportunity to analyze the merits of both motions under the divergent lines of caselaw, the court took both matters under advisement.

Now finding the *Maitland, Gaglia* and *Dewsnup* decisions to be well reasoned and more persuasive than the *Tanner* line of decisions, this court declines to follow the unpublished prior bankruptcy decision of this district which allowed mortgage lien avoidance by Chapter 7 debtors. The statutory framework of the Code and the facts of the case demand that the automatic stay be lifted and the motion to dismiss the adversary proceeding be granted.

CONCLUSION

WHEREFORE, based upon the foregoing discussion, the court finds that the Hoyts have no equity in the property in issue and the property is not necessary to an effective reorganization.

The court further finds that the Hoyts can not utilize section 506(d) to avoid the unsecured portion of the SBA's mortgage lien and, accordingly, have failed to state a cause of action in the adversary proceeding.

Separate orders granting the motion for relief from stay and dismissing the adversary proceeding shall be entered simultaneously with this memorandum of decision.