**In re Glenna Faye SHRUM, Debtor.**

**Bankruptcy No. BK–88–06602–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

April 12, 1989.

James LaCoste, Oklahoma City, Okl., for debtor.

Anthony W. Villani, Oklahoma City, for Tinker Credit Union.

Before BOHANON, Chief Judge, and LINDSEY and TESELLE, Bankruptcy Judges, en banc.

## MEMORANDUM OPINION AND ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

On January 25, 1989, debtor filed her motion for order determining the value of a secured claim and for order voiding lien. Debtor asserted that her home had a market value of $30,000, that it was subject to a first mortgage to Investor Residential Mortgage Company, securing a loan having a principal balance in excess of $30,000, and that it was also subject to a second mortgage in favor of Tinker Credit Union ("Tinker"). Debtor sought a determination under 11 U.S.C. § 506(a) valuing the allowed secured claim of Tinker at zero and that Tinker's claim be allowed as an unsecured claim only. Debtor also sought a determination under 11 U.S.C. § 506(d) that Tinker's lien was void.

On February 10, 1989, Tinker filed its objection to debtor's motion and its brief in support thereof.

On February 21, 1989, Tinker filed its motion seeking a hearing *en banc* before the three bankruptcy judges of this court, on the motion and response. On March 7, 1989, an order was entered setting an *en banc* hearing to be held March 13, 1989, asserting the belief that a uniform approach to the issues raised in the motion and objection would be beneficial to the administration of bankruptcy cases.

At the hearing, debtor and Tinker were represented by counsel and the *en banc* court heard arguments on the legal issues raised by the motion and response. At the conclusion of those arguments, the *en banc* court took the legal issues under advisement and a further hearing was held before this court, to whom the case had been assigned, on the factual issue of valuation of the property in question.

Debtor filed her petition under Chapter 7 of the Bankruptcy Code on October 17, 1988. Debtor, a single individual, recited that she supported herself and her mother, that her total monthly income, net of all deductions, was approximately $1,971, that her current monthly expenditures totaled $1,930, including home loan payments of $431, installment payments on an auto loan of $346 and charitable contributions of $240. She reported having had income in the amount of $27,376 during 1987.

In the schedules which accompanied her petition, she showed total debts of $75,786, consisting entirely of secured claims, and property of a total value of $75,600, consisting of real property valued at $60,000, cash on hand and deposits in the amount of $6,100, household goods valued at $1,500, wearing apparel and personal possessions valued at $1,000 and an automobile valued at $7,000. The real property consisted of the property in question here, debtor's personal residence, valued at $40,000 [note, not $30,000 as in her motion three months later] and an additional parcel of real property valued at $20,000.

The schedule of secured indebtedness included an $11,786 claim against the parcel of real property other than debtor's residence, a $12,000 claim against the $7,000 automobile, a 1987 Mercury Cougar, a $33,000 first mortgage claim against the personal residence, and Tinker's claim of $19,000, which was scheduled as a personal loan secured by a $5,700 savings account deposit, and not shown as being secured by the residence as well.

Following the filing of the petition, debtor filed her statement of intention to surrender the second parcel of real estate to the secured creditor, FDIC, and the $5,700 savings account to Tinker. The statement further noted her intention to retain the 1987 Mercury Cougar and the personal residence, both of which would be reaffirmed pursuant to 11 U.S.C. § 524(c).

On December 23, 1988, Tinker filed its motion for relief from the automatic stay and to require the trustee to abandon the estate's interest in the savings account scheduled by the debtor as securing her indebtedness to Tinker. That motion was not responded to and, in accordance with Local Bankruptcy Rule 12(d), the same was therefore deemed confessed. An order was entered on January 20, 1989, modifying the automatic stay as to the account and directing the trustee to abandon it. Five days later, debtor filed her motion under 11 U.S.C. § 506, which is the subject matter of this opinion and order.

It is debtor's contention that provisions of 11 U.S.C. § 506(a) may be employed by her to obtain a determination of the fair market value of her principal residence at the date her petition was filed, thus fixing the extent of the allowed secured claim available to the holders of liens against that property. She then contends that the provisions of 11 U.S.C. § 506(d) operate to void the lien of any creditor to the extent the debt exceeds the amount of the allowed secured claim. She contends that her right to effect this result is clear from the plain language of § 506 and that such right is an important part of the "fresh start" promised to debtors by the Bankruptcy Code. Assuming the accuracy of the motion's statement of the value of the residence and of the claim amounts recited in debtor's schedules, the second lien of Tinker would be completely extinguished by the operation of the § 506 process.

It should be noted that no objection was filed or stated to the list of property claimed as exempt by the debtor, within the period provided for the filing of such objections in Bankruptcy Rule 4003(b), or thereafter. Thus, in accordance with 11 U.S.C. § 522($l$), the property claimed as exempt by debtor is exempt.

The provisions of 11 U.S.C. § 506, in pertinent part, are as follows:

(a) an allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . .

(d) to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Tinker contends that to permit the avoidance of its lien as sought by debtor would render 11 U.S.C. § 722 superfluous. Section 722 is, in its entirety, as follows:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer

debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

A number of courts have considered these provisions, the apparent inconsistency between them, and whether a Chapter 7 debtor may employ § 506 in order to value a secured claim and void the lien securing that claim to the extent the claim exceeds the underlying value of the security. In this court's view, the recent opinion of Judge Glen E. Clark in *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988), contains among the most cogent and comprehensive analyses of the issues and collections of the various authorities. Judge Clark cites as the leading case allowing § 506(d) lien avoidance, *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Penn.1981). Although *Tanner* involved a debtor seeking to avoid the lien of a junior mortgage upon her home, the issue, as stated by the court, was simply whether § 506(d) permitted the avoidance of *any* real property mortgage. The debtor relied upon the plain language of § 506(d), but defendant argued that Congress did not intend real property mortgages to be voidable and that the term "lien" did not refer to a lien of a mortgage on real property. Defendant's argument was principally that the security interest of a real property mortgage was of the "highest dignity" and that Congress would have specifically stated its intention to include the same if such was the case. The court held that the only reasonable construction of the word "lien" as used in § 506(d) was that it was intended to refer to real property mortgages. While it is not specifically stated in *Tanner*, it must be assumed that the residence in question had either been claimed as exempt by, or abandoned to, the debtor. In the opinion, there is no indication that the defendant raised, or that the court considered the issue of whether the property was "property in which the estate has an interest," as that term is employed in § 506(a). Neither is there any mention whatever of § 722.

In *In re Lyons*, 46 B.R. 604 (Bankr.N.D. Ill.1985), the debtors' residence was subject to two mortgages, the second of which, according to the stipulated facts, was partially in excess of the fair market value of the property. The court had entered an order finding the claim of the second mortgagee to be unsecured to the extent of the excess of the claim over the current market value of the residence after deducting the balance of the first mortgage. The second mortgagee sought a modification of the order to permit it to seek periodic redeterminations of the property value in order to afford it the effect of any post-petition appreciation in value. The court discussed *Tanner* and the subsequent, contrary cases of *In re Cordes* and *In re Mahaner, infra.* As in *Tanner*, there was no reference to the interest of the estate in the property and, while it is assumed, it is not stated that the property had been claimed as exempt. The court discusses the apparent inconsistency between permitting the avoidance of liens under § 506 and the redemption provisions of § 722, which are limited to tangible personal property of a particular type.

The court also discusses the argument that Congress would not have intended to permit Chapter 7 debtors a benefit not available to Chapter 13 debtors, referring to the prohibition of modification of the rights of the holders of a secured claim in a Chapter 13 plan where the claim is secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). It should be noted that, in this case, § 1322(b)(2) would not appear to be applicable to Tinker even if this were a Chapter 13 case, since Tinker took a security interest in the savings account referred to above as well as the residence.

The *Lyons* court, after discussing § 1322(b)(2), opines without discussion or rationale of any kind that a shorter term home improvement loan "probably" was not intended by Congress to be protected under § 1322(b)(2), and that therefore permitting § 506(a) and (d) utilization by a Chapter 7 debtor would not give him an advantage not available under Chapter 13.

The court finds this statement and conclusion incredible in the light of the clear, unambiguous language of § 1322(b)(2).

The *Lyons* court, after noting that the result sought by debtor might discourage the use of the rehabilitative provisions of Chapter 13 and further noting the manifest unfairness of permitting a debtor to retain his house after avoiding liens to the extent they exceeded its value, nevertheless followed *Tanner* as the result which "seems to be the one which the Code compels." Again, the court did not address the issue of whether the estate had any interest in the property. In fact, the principal thrust of the holding appeared to be directed, as in *Tanner*, at a determination that § 506(d) was intended to apply to real property as well as personal property.

One of the cases referred to in *Lyons* is *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y.1983)[1]. In that case, a secured creditor moved for relief from the automatic stay created by 11 U.S.C. § 362(a) and the defendant responded by moving for a valuation of the property under § 506 for the purpose of paying off the allowed amount of the secured claim. The property does not appear to have been a residence, or to have been claimed as exempt and there is no mention of abandonment. The creditor relied upon the fact that § 722 did not permit the redemption of real property in a Chapter 7 proceeding, that the statutory grounds for modification of the stay under 11 U.S.C. § 362(d)(1) and (2) are satisfied and that the stay should therefore be modified.

The court states three arguments as to why § 506 should not be used to avoid a mortgage lien in a Chapter 7 case. The first is the argument that § 722 is the exclusive Chapter 7 redemption provision. The second is that "it is simply not good policy to permit a debtor to get in Chapter 7 more than he would get in Chapter 11 or 13." In connection with this argument, the court cites § 1322(b)(2) and 11 U.S.C. § 1111(b)(2). The latter provision permits a secured creditor in a Chapter 11 case to make an election which has the effect of permitting his lien to remain upon the property in its full amount. The court concludes that such specific provisions should prevail over inconsistent general provisions such as those found in § 506 and that a contrary result would do injury to the Congressional intent of strongly encouraging repayment and rehabilitative plans as opposed to liquidation. Finally, the *Mahaner* court rather cavalierly asserts, with no citation of authority whatever, that to permit lien avoidance under § 506(d) in a Chapter 7 case would constitute the taking of a property interest without adequate compensation in violation of the U.S. Constitution. The court therefore, without further comment, simply granted the motion of the creditor for the modification of the stay to permit it to proceed with foreclosure in state court.

In *In re Worrell*, 67 B.R. 16 (C.D.Ill. 1986), the debtors owned two parcels of real property, neither apparently claimed as exempt. Again, there is no mention of abandonment. According to debtors' complaint, the two mortgages against the property exceeded its value by almost $300,000. Debtors sought, under § 506, to have the allowed secured claims of the mortgagees determined, to have them declared unsecured to the extent they exceeded the property's value, and to have the liens declared void to that extent as well. Debtors also requested that the court determine the maturity and amount of the payment on the secured portion of the creditors' claim after voiding the unsecured portion. After a hearing on the creditors' motion to dismiss, the bankruptcy court dismissed debtors' complaint.

The district court cited *Tanner* and certain of its then progeny. It also cited *Mahaner* and *In re Cordes*, 37 B.R. 582 (Bankr.C.D.Calif.1984). The court then referred to the difficulty which the *Lyons* court had in reaching its decision to follow *Tanner*. The court nevertheless concluded

---

**1.** This case appears at 9 C.B.C. 688 as *In re Mahanger*, and the latter spelling also appears at two places in 34 B.R., at 309. Inasmuch as the former spelling is employed throughout the briefs and the subsequently-decided cases, however, it will be employed herein as well.

that the *Tanner* and *Lyons* decisions were correct, in spite of the court's "sense of what is right and equitable" and that the question was one which Congress, and not the courts, should address.

In *In re Maitland,* 61 B.R. 130 (Bankr.E. D.Va.1986), we finally find a case involving real property which is described as having been abandoned by the Chapter 7 trustee to the debtors. Also in *Maitland,* we find a court which has found, cites and recognizes the relevance to the issues before it of the pre-*Tanner* case of *In re Harvey,* 3 B.R. 608 (Bankr.M.D.Fla.1980). *Harvey* stands for the proposition that § 506 was not designed by Congress to operate as a substitute for a proceeding to modify the automatic stay. In the course of its discussion, however, the court made the following statement:

> While the legislative history fails to shed any light on whether or not the phrase "property in which the estate has an interest" was intended to limit the valuation process to non-exempt property, it indicates that it was intended to deal with properties of the estate which are being administered under the Code and not to deal with properties which were released as exempt or abandoned.

Relying in part on the language in *Harvey,* the *Maitland* court concludes, as follows:

> Although § 506(a) may be used by the debtor to determine the amount he must pay to a secured creditor to redeem personal property under 11 U.S.C. § 722, the intention of § 506(a) is to assist in the determination and distribution of funds of the estate to secured and unsecured creditors, to determine the amount of a secured claim for purposes of confirmation of a plan of reorganization under Chapter 11 or Chapter 13, to determine the amount of adequate protection to which a creditor is entitled under § 361 and § 363(e) if cash collateral is to be used by the debtor under § 363(c)(2), or to determine the amount of the debtor's exemptions in encumbered property. Butler, "Valuation of Secured Claims Un-

der 11 U.S.C. § 506(a)" 89 *Com.L.J.* 342, 345 (1984).

The *Maitland* court declined to permit debtors to use § 506(a) to determine the extent of allowed secured claims against abandoned real property, or to use § 506(d) to void liens against the property to the extent they are unsecured.

Judge Clark, in *Dewsnup,* after discussing all of these arguments and the decided cases, ultimately concludes that to concentrate exclusively upon the "fresh start" promised debtors, at the expense of the property rights of creditors, is a misguided approach. He notes that although the debtors want to keep their property and be entitled to the future appreciation in the value of it without paying the full amount of the obligation secured by the lien, that result is one to which they would not be entitled at a forced sale of the property. He thus reaches the same result reached in *Maitland,* that debtors should not be permitted to use § 506(a) and (d) to void undersecured liens in abandoned or exempt property.

It is clear that § 522 permits an individual debtor to exempt property from the estate, "[n]otwithstanding Section 541." Debtor in this case has done so. 11 U.S.C. § 522(*l*). It is equally clear that the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. 11 U.S.C. § 554(a).

> As Judge Clark points out in *Dewsnup:* When property is properly abandoned by the trustee, the property is no longer property of the estate and the estate, consequently, has no interest in the property. *See,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 343 (1977). U.S.Code Cong. & Admin.News 1978, p.6299 ("property ceases to be property of the estate, such as by sale, abandonment, or exemption."); *In re Cruseturner,* 8 B.R. 581 (Bankr.D.Utah 1981).

It is clear to this court, therefore, that property which, upon filing of the petition, became "property of the estate" under § 541, no longer retains that status when it is properly exempted or abandoned. In a

Chapter 7 case it ceases to be "property in which the estate has an interest."

The primary duty of the trustee in a Chapter 7 case is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). So long as property remains in the estate, the trustee's duty to administer the estate and to reduce it to money is paramount. The debtor has neither the duty nor the right to interfere with the trustee in the exercise of his administration of the estate.

The last sentence in § 506(a) states that the "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." It is common in Chapter 12 and Chapter 13 cases for debtors to propose plans which deal with and affect abandoned and/or exempted property, such as real property occupied as the homestead and motor vehicles intended for personal use. In such cases, even though the property may no longer be "property of the estate," it nevertheless remains "property in which the estate has an interest." Plan proponents in Chapter 12 and Chapter 13 cases, and, if applicable, in Chapter 11 cases as well, must therefore be permitted to employ § 506(a) in conjunction with the proposed impairment or modification of the rights of the holders of secured claims under § 1123, § 1222 or § 1322, and in order to determine the value of property required to be distributed under the plan on account of an allowed secured claim under § 1129(b)(2), § 1225(a)(5)(B) or § 1325(a)(5)(B), even if the property involved has been claimed as exempt or has been abandoned. This opinion and order is not intended to prevent the use of § 506(a) for any of these purposes.

Congress has provided numerous incentives to debtors choosing reorganization or rehabilitation under Chapters 11, 12 or 13, rather than liquidation under Chapter 7. It is believed that the availability of § 506 in connection with plans under those chapters which deal with exempted or abandoned property is simply another such incentive. The right of a debtor to reduce or eliminate liens secured by such property is of course subject to the exception contained in § 1322(b)(2) and the available election under § 1111(b)(2).

The last sentence in § 506(a) would also operate to prevent a Chapter 7 debtor from accomplishing indirectly what could not be accomplished directly. Thus, a Chapter 7 debtor would not be permitted to wait until the court had determined the value of allowed secured claims against property of the estate and then seek to claim the property as exempt or to cause it to be abandoned, with the intention of then asserting that liens securing the unsecured portion of such claims were void under § 506(d). Similarly, § 506 determinations in connection with Chapter 11, 12 or 13 plans, dealing with exempt or abandoned property, could not be used to limit or avoid liens if the case is later converted to a case under Chapter 7.

Finally, as the court in *Maitland* concluded, it is also this court's belief that § 506(d) was primarily intended to assist in the sale of property by the trustee in a Chapter 7 case or by the debtor-in-possession in a Chapter 11 case, in order to extinguish the entire lien even though the sale price is not sufficient to satisfy the debt.

■ At the *en banc* hearing in this matter, counsel was asked whether the portion of the proceeding at which debtor sought to void the undersecured portion of Tinker's lien was appropriately before the court in the form of a motion. The question referred to Bankruptcy Rule 7001(2), which requires the commencement of an adversary proceeding "to determine the validity, priority or extent of a lien or other interest in property...." Counsel for Tinker indicated that inasmuch as the parties were before the court, having had adequate notice and opportunity to prepare, any objection that the proceeding was not in the proper form had been waived. While this court does not disagree with counsel's appraisal of the procedural posture of this

matter, it notes that the provisions of Rule 7001(2) could hardly be more clear. The validity, priority or extent of a lien may only be determined through an adversary proceeding. In view of the result reached herein, however, any procedural error is harmless.

Should a dispute arise with regard to the validity or extent of a lien after a § 506(a) determination, either in the bankruptcy case or in another proceeding, an adversary proceeding would be an appropriate vehicle through which to determine the issues. No such dispute would be expected to arise in the vast majority of cases.

■ It is this court's opinion that the cases which have permitted the Chapter 7 debtor to employ § 506(a) and (d) as debtor herein seeks to do, have failed to give effect to the language limiting § 506(a) to "property in which the estate has an interest." As Judge Clark points out in *Dewsnup*, an action by Chapter 7 debtors seeking relief under § 506 would not state a cause of action unless the property at which the action is directed had been abandoned from the estate or exempted. *Dewsnup, supra*, 87 B.R. at 677, n. 1. This court is of the view that *Mahaner* reaches the correct result but not for the right reasons. On the other hand, *Maitland* and *Dewsnup* are believed to be correct, in both result and reasoning. In a Chapter 7 case, property which is exempt under § 522 or abandoned under § 554 is not "property in which the estate has an interest," as that term is employed in § 506(a). That provision, therefore, is not available to a Chapter 7 debtor for the purpose of voiding the lien of a creditor's claim to the extent that it is not an allowed secured claim.

For the reasons set forth herein, debtor's motion for order determining the value of a secured claim and for order voiding lien, will be denied.

This court is authorized to announce that Chief Judge RICHARD L. BOHANON concurs. The views of Judge JOHN TESELLE on the issues presented to the *en banc* court are set out hereafter.

JOHN TESELLE, Bankruptcy Judge.

What follows might best be described as a "dissenting concurrence."

With great reluctance, and with great respect for the legal scholarship of my colleagues, I take this opportunity to present my view on the applicability of 11 U.S.C.A. § 506 (West 1979 & Supp.1989), which differs only in part from their position.

### Case Law

As noted by Judge Lindsey, the courts are not in agreement concerning the application of § 506. The apparent lack of consistency in the opinions of the courts which have dealt with this problem illustrates the uncertainty present in this area of the bankruptcy law. It is noted that the foregoing Opinion, as well as the *Maitland* and *Dewsnup* opinions, rest upon the language of § 506(a) limiting its applicability to "property in which the estate has an interest."[1] *Maitland v. Central Fidelity Bank (In re Maitland)*, 61 B.R. 130, 132–35 (Bankr.E.D.Va.1986); *Dewsnup v. Timm (In re Dewsnup)*, 87 B.R. 676, 680–83 (Bankr.D.Utah 1988).

In order for a debtor to exempt property from the bankruptcy estate, at least two requirements must be met. First, the property must qualify for exemption under some state or federal statute. 11 U.S.C.A. § 522(b)(1) & (b)(2) (West 1979 & Supp. 1989). Secondly, the debtor must have an equity in the property, because it is only the debtor's equity in such property to which the exemption attaches.[2] *Dewsnup*,

1. The bankruptcy estate "is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1979 & Supp.1989).

2. For example, under tit. 31, § 2, the debtor is entitled to exempt "[t]he homestead within any city or town, owned and occupied as a residence only, ... not exceeding one acre of land, to be selected by the owner: Provided, that the same shall not exceed in value the sum of five thousand dollars, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value...." Okla.Stat. Ann. tit. 31, § 2 (West 1976). Thus, if the indebtedness secured by a mortgage is $95,000.00, and the value of the homestead is $100,000.00,

87 B.R. at 677 n. 1 (citing *Wilson v. General Motors Acceptance Corp. (In re McCoy)*, 643 F.2d 684 (10th Cir.1981) and *Styler v. Local Loan Fin. Servs. (In re Lanctot)*, 6 B.R. 576 (Bankr.D.Utah 1980)).

In those cases where the indebtedness secured by one or more mortgages exceeds the value of the debtor's homestead, no equity exists and thus no portion of the homestead is eligible for exemption. Neither is the homestead abandoned from the estate until either a mortgage holder moves for its abandonment (usually done in connection with a motion for relief from the stay), or it is specifically abandoned by the trustee. Until either of these events occurs, the homestead remains property of the estate subject to being dealt with by the bankruptcy court.

The *Dewsnup* court assumed "for the purpose of this opinion, ... that the real property has been or will be abandoned to the debtors." *Id.* It is submitted, however, that until abandonment, the homestead remains property of the estate subject to valuation under § 506. Such valuation may be requested by any party in interest.[3] Fed.R.Bankr.P. 3012. For this reason, the rationale of *Dewsnup* is not well founded and unnecessarily ignores the negative impact which will result from a uniform application of its holding.

### Application of § 506

My view can best be explained by considering three separate situations. Those situations involve 1) an undersecured first mortgage; 2) a second mortgage, where the value of the real property does not exceed the amount owed on the first mortgage, (hereinafter such second mortgage is characterized as "Under Water"); and 3) a second mortgage, where the value of the real property exceeds the amount due on the first mortgage but is less than the amount due on the second mortgage (partially Under Water).

### I. Undersecured First Mortgage

In the case of an undersecured first mortgage, I concur with the result reached by Judge Lindsey. The drafters of the Bankruptcy Code could not have intended § 506 to be utilized to permit a debtor to achieve a greater benefit under a Chapter 7 liquidation than the debtor would be entitled to receive under a Chapter 11 or 13 reorganization. *In re Mahaner*, 34 B.R. 308, 309 (Bankr.W.D.N.Y.1983). Chapter 11 provides that an undersecured creditor may elect to have its claim treated as fully secured.[4] *Id.* at 309. In a Chapter 13 case, § 1322(b)(2) precludes a § 506 valuation of a claim secured only by a first mortgage. *Id.;* 11 U.S.C.A. § 1322(b)(2) (West Supp. 1989). Thus, I agree that § 506 may not be used in a Chapter 7 proceeding to void any portion of an undersecured first mortgage.

### II. Second Mortgage Completely Under Water

In the case of a claim secured by a second or other mortgage of lower priority which is completely Under Water, it is my view that the creditor's mortgage is, for all practical purposes, worthless. A worthless mortgage is the equivalent of no mortgage at all; thus the claim is, in reality, not secured. This analysis permits the application of § 506 in a Chapter 13 case to void a worthless second mortgage without violating the provisions of § 1322(b)(2).

What result will ensue if a debtor is precluded from applying § 506 in a Chapter 7 case where the second mortgage is completely Under Water? In such a case, a debtor foolish enough to continue making payments on a first mortgage will only enrich the holder of the otherwise worthless second mortgage. Such payments will decrease the amount owed on the first mortgage until the point is reached that

an acre of urban homestead land may be exempted.

3. The statement in *Dewsnup* that "[unless] the property [at issue] is abandoned ... the debtors would have no standing to assert their claim to avoidance" is contrary to the plain language of Bankruptcy Rule 3012. 87 B.R. at 677 n. 1.

4. The benefits of the § 1111(b)(2) election are dubious, as its apparent advantages are substantially negated by § 1129(b)(2)(A). 11 U.S.C.A. §§ 1111(b)(2) & 1129(b)(2)(A) (West 1979 & Supp.1989). The § 1111(b)(2) election is seldom made and it is even less frequently understood.

each additional payment will directly increase the value of what was initially a worthless second mortgage.

Consequently, the payments to the first mortgage holder will not be made, and the resulting default will cause the first mortgage holder to soon thereafter commence a foreclosure action. This will preclude any recovery by the holder of the worthless second mortgage, who will be no better off in this situation than had the second mortgage been voided under § 506.

On these facts, the first mortgage holder will incur the expense of an unwanted and otherwise unnecessary foreclosure and the debtor will lose his or her home, without the second mortgage holder deriving any benefit from its mortgage. When the second mortgage is clearly Under Water, why not permit § 506 to be applied in a Chapter 7 case to void the second mortgage,[5] thereby benefitting both the holder of the first mortgage and the debtor with no resulting financial detriment to the holder of the second mortgage?[6] If the second mortgage holder stands to gain nothing financially, the only benefit to the second mortgage holder in precluding the application of § 506 in a Chapter 7 case is either that of retribution or coercion, neither of which should be facilitated by the courts.

The argument has been made that to apply § 506 in a Chapter 7 case would deny the holder of the second mortgage its right to pay off the first mortgage and hold the property for its future appreciation. A demonstrated intent of this kind by the second mortgage holder would constitute a basis for sustaining the mortgage holder's objection to the § 506 valuation of its mortgage. However, it is submitted that the holder of a second mortgage would file such an objection only on very rare occasions. Most real estate lenders in this judicial district have already acquired more

real estate than they want to hold, do not want to become more illiquid, and are not interested in throwing good money after bad.

In addition to the foregoing, my objection to following the Utah court's holding in *Dewsnup*, 87 B.R. at 683, is that while the application of its holding in this judicial district would dispose of the pending cases, in future cases knowledgeable attorneys will simply request § 506 valuations on their debtor client's residences prior to claiming an exemption for the debtor's residence. This will merely increase the paperwork and/or penalize those debtors who have less clever attorneys, or require the court to police such attempts,[7] all of which are rendered unnecessary by my approach.

### III. Second Mortgage Only Partially Under Water

The difficulty with my position arises when confronted with the problem of a second or lower priority mortgage on the debtor's principal residence, which is partially but not completely Under Water. If the debt is secured *only* by a mortgage on the debtor's principal residence, the literal language of § 1322(b)(2) would appear to prohibit the application of § 506. In this situation, consideration should be given *inter alia* to the following factors: the percentage of the debt that is Under Water, the term of the mortgage, the purpose for which the debt was incurred, and the rate of interest charged.

A number of cases consider these and other pertinent factors in determining whether to grant a § 506 valuation in such a case. Generally, in these cases the primary consideration is whether the second mortgage holder is of the type § 1322(b)(2) was intended to protect (i.e. long term, purchase-money mortgagees of residential property, who as a group have not been

---

5. It appears that this would be permitted by my colleague's Opinion in a Chapter 13 case where the mortgage was not secured *only* by the principal residence. § 1322(b)(2).

6. In fact, the second mortgage holder may thereby derive a benefit. The voiding of the second mortgage would convert a worthless secured claim into an unsecured claim which

would thereafter be eligible to participate in any general distribution which might be made.

7. Assuming that the last sentence of § 506 authorizes a court to vacate a prior valuation if the property is later exempted, abandoned, or if the proceeding is subsequently converted to one under Chapter 7.

abusive). *See In re Shaffer,* 84 B.R. 63, 65 (Bankr.W.D.Va.1988), and cases cited therein.[8] Application of these criteria would necessitate proceeding on a case-by-case basis, but it is my belief the cases would be few in number and equity could be done.

Motion Practice or Adversary Proceeding

Requiring all requests for § 506 valuation hearings to be filed as adversary proceedings will prolong disposition time, and place an additional burden on the Courts and on the attorneys (which translates into placing an additional expense on the debtors), without a compensating benefit.

Bankruptcy Rules 3012 and 7001(2) appear to be in conflict. Fed.R.Bankr.P. 3012 & 7001(2). Thus, why not permit the quickest, easiest and least costly procedure to be utilized, which would be to allow such matters to be brought by motion?

Conclusion

My view is predicated on a desire to facilitate the debtor's "fresh start" when it can be accomplished, as in cases of this nature, with virtually no harm to the creditors. The language of § 506 does not preclude this result and it is my belief that equity requires such a common sense application of § 506.

Need for Uniformity

Notwithstanding my view, the purpose of the *en banc* hearing was to arrive at a uniform method of applying § 506 in this judicial district. In my opinion, such uniformity is more desirable than having a debtor's rights determined by the random draw assignment of cases to specific judges made in the clerk's office. For that reason, I defer to my colleagues and elect, in the future, to adhere to the majority opinion set forth above.[9]

---

**8.** The *Shaffer* court cogently stated that Congress did not intend § 1322(b)(2) to protect short-term, non-purchase money, second mortgages. 84 B.R. at 65; *See also Lyons v. First Pa. Bank (In re Lyons),* 46 B.R. 604, 606 (Bankr.N.D. Ill.1985).

**9.** Rulings made in previous cases are not affected by my election to adhere in the future to the majority opinion in this case.