**In re Paul D. LEVERETT and Patsy A. Leverett, Debtors.**

**Bankruptcy No. BK–92–13086–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

Sept. 29, 1992.

**710**

J. Clay Christensen, Edwards, Sonders & Propester, P.C., Oklahoma City, Okl., for First State Bank.

Nellie Perry, Perry, Gentry, Perry & Marsh, Hobart, Okl., for debtors.

Jack Cornelius, Oklahoma City, Okl., Chapter 12 Trustee.

## ORDER ON SINGLE REMAINING CHAPTER 12 CONFIRMATION ISSUE

PAUL B. LINDSEY, Bankruptcy Judge.

In this case, filed under Chapter 12 of the Bankruptcy Code,[1] debtors and First State Bank of Hollis, Eldorado and Sayre ("FSB"), the creditor which had objected to confirmation of their proposed plan, have reached agreement upon all controverted issues save one. At the September 15, 1992 hearing on confirmation of the plan, the parties stipulated that the plan could be confirmed effective that date, in order to promptly commence the making of pay-

ments under the plan. The parties agreed that the single remaining issue could be taken under advisement by the court, and that the court's resolution of the issue, when rendered, would be incorporated into a formal confirmation order to be prepared and presented thereafter. The Chapter 12 standing trustee voiced no objection to the procedure suggested by debtors and FSB, and it was adopted by the court.

The issue in this case was addressed in the recently decided case of *Kinder v. Security Bank & Trust Co. (In re Kinder)* 139 B.R. 743 (Bankr.W.D.Okla.1992), also involving a Chapter 12 debtor. It involves the determination of the point in time when a secured creditor's lien is voided or avoided with respect to the unsecured portion of its claim, as that portion is determined under § 506(a).[2]

The parties, in order to limit administrative costs, requested that they not be required to file briefs on the issue, and have provided the court with copies of briefs filed by the parties in *Kinder.* Since the parties have provided no authorities for their respective positions except to urge either adoption or rejection of the *Kinder* decision, it is necessary that the court discuss that decision in some detail.

## THE KINDER CASE

In *Kinder,* debtors filed an adversary proceeding against the secured creditor, seeking avoidance, at the time of plan confirmation, of the portion of a secured creditor's lien attributable to its unsecured claim, as determined under § 506(a) and as provided for in debtors' confirmed plan. Debtors contended that such was appropriate under the Code, and that the secured creditor was protected against a subsequent dismissal of the case by the provisions of § 349(b)(1)(C), which provides for

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

2. Section 506(a), insofar as it is relevant to the issue presented in this case, is as follows:

§ 506. Determination of secured status.
   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim....

reinstatement of any lien voided under § 506(d).[3]

Creditor responded, asserting that the Chapter 12 does not contemplate the "stripping down" of mortgage liens until discharge of the particular debt to which the liens attach. In the same vein, creditor asserted that debtors are not entitled to the benefits of § 506 lien-stripping unless and until their plan has been consummated and debtors have received their discharge, at which time creditor conceded that lien avoidance would automatically take place under the terms of the plan.

Creditor also urged that while § 349 would effect reinstatement of the avoided lien in the event of dismissal, § 348 does not provide for such reinstatement in the event of conversion of the case to a case under Chapter 7.[4] Creditor asserted that pre-discharge avoidance of the lien, followed by conversion of the case to a case under Chapter 7, would permit debtors, albeit indirectly, to strip down a mortgage in a Chapter 7 case, precisely what had been held to be impermissible by the court of appeals for the Tenth Circuit in *Dewsnup v. Timm*, 908 F.2d 588 (10th Cir.1990); *cert. granted,* — U.S. —, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991).[5]

Creditor in *Kinder* finally asserted that, if the plan was successfully completed and the debtors received their discharge, no further order of the court would be necessary in order to effectuate the avoidance of the lien on the unsecured claim, as the same would automatically take place, and that the entry of any such order by the court prior to completion of the plan and the entry of debtors' discharge would be both premature and inappropriate.

In its response, creditor also suggested that the issue before the court could be expected to be directly affected by the decision of the Supreme Court in *Dewsnup.* The Supreme Court thereafter decided *Dewsnup,* — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), affirming the court of appeals decision.[6] As the court in *Kinder* points out, however, that decision did not provide the guidance which had been anticipated.[7]

In view of creditor's arguments, and of the uncertainty created by the Supreme Court holding in *Dewsnup,* which had been released less than four months earlier, the court in *Kinder* determined that it was appropriate to "condition the actual extinguishment of [creditor's] lien upon payment of [creditor's] allowed secured claim and discharge of that debt."[8] The court

---

**3.** Section 506(d), insofar as is applicable here, is as follows:

    (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

**4.** Creditor also expressed concern as to the ease with which the reinstated lien could be enforced, since under § 1227(b), all of the property of the estate would have been vested in the debtor at the time of confirmation, and throughout the pendency of the case under the plan.

**5.** In *Dewsnup,* debtors in a Chapter 7 case sought to reduce the amount of a creditor's secured claim upon certain real estate to its actual value under § 506(a), to void the lien on the remaining unsecured claim under § 506(d), and to, in effect, "redeem" the property by paying the creditor the reduced amount of the secured claim.

    The bankruptcy court assumed abandonment of the property by the Chapter 7 trustee, determined that once property was abandoned it no longer was "property in which the estate has an interest," as that term is employed in § 506(a), and that it was not longer within the reach of

§ 506(a) or, by implication, § 506(d), and denied the relief sought. 87 B.R. 676 (Bankr. D.Utah 1988).

    The district court affirmed without opinion and the court of appeals affirmed, additionally noting that to hold otherwise would be inconsistent with § 722, under which a Chapter 7 debtor is permitted to redeem certain personal property. 908 F.2d at 589–590. The Supreme Court granted certiorari in view of the conflict with *Gaglia v. First Federal Savings & Loan Assn.,* 889 F.2d 1304, 1306–11 (3d Cir.1989).

**6.** Subsequent references herein to *Dewsnup* will be to the Supreme Court decision, unless the contrary is clearly indicated.

**7.** The court points out that the Supreme Court declined to address the applicability of or to extend its holding to cases other than the one before it. *Kinder,* 139 B.R. at 744 (quoting from *Dewsnup,* — U.S. at —, 112 S.Ct. at 778).

**8.** *Kinder,* 139 B.R. at 745. The court also noted that the payment period for creditor's allowed secured claim extended beyond the life of debt-

noted that the payment period for creditor's allowed secured claim extended beyond the life of debtors' plan, denied debtors' motion for summary judgment and granted that of creditor.[9]

## STATEMENT AND DISCUSSION OF PROBLEM

The court in *Kinder* was attempting to protect creditor from the results of the possible extension of *Dewsnup*, as well as from any subsequent conversion of the case. It appears, however, that in delaying the avoidance of the creditor's lien until the payment in full of the allowed secured claim, which would occur after the completion of the plan, the court gave creditor more than it had sought.

As is noted above, creditor in *Kinder* took the position that upon completion of the plan, debtors would receive their discharge, and avoidance of the lien on the unsecured claim would occur at that time in accordance with the plan without any further action, by the court or otherwise. The court's decision, however, further delayed the avoidance of the lien on the unsecured claim until the secured claim was paid in full. Although the precise payout term in *Kinder* is not disclosed, payment in full of the secured claim in these cases may not occur until many years after the end of the term of the plan.[10]

In *Dewsnup*, the court found ambiguity in the language of § 506 and concluded, based at least in part upon Congress' failure to specifically indicate its intention to depart from the pre-Code rule that liens pass through bankruptcy unaffected, that the words "allowed secured claim" do not have the same meaning in § 506(d) as in 506(a). The court then held "that § 506(d) does not allow petitioner to 'strip down' respondent's lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502."

*Dewsnup*, at ——, 112 S.Ct. at 778. The court expressed no opinion on whether the words "allowed secured claim" have different meanings in other provisions of the Code. *Id.* n. 3.

■ *Dewsnup* clearly precludes, in any bankruptcy case, the use of § 506(d) to void a lien securing a claim which has been allowed in full under § 502. It is this court's view, however, that other provisions of the code authorize the voiding or avoiding of liens other than through § 506(d).

Under § 522(f), a debtor under any chapter of the code may avoid the fixing of liens of certain types on an interest of the debtor in property to the extent the lien impairs an exemption available to debtor under § 522. Under § 1123(a)(5)(E), a Chapter 11 plan of reorganization must provide adequate means for the plan's implementation, which may include "satisfaction or modification of any lien." Under § 1123(b)(1), such a plan may "impair or leave unimpaired any class of claims, secured or unsecured; or of interests." Under § 1222(b)(2), a Chapter 12 plan may "modify the rights of holders of secured claims...." Under § 1322(b)(2), a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...."

In Chapter 11, the court may "cram down" a Chapter 11 plan of reorganization, i.e., confirm it notwithstanding the failure of a particular class to accept it, if the same is found to be fair and equitable. One of the prerequisites to such a finding is, in the case of a class of secured claims, that the plan provides that the holders of such claims retain the liens securing the claims, to the extent of the allowed amount of such claims, and that each holder of such a claim receive deferred cash payments totaling at least the allowed amount

---

or's plan. *See* § 1222(b)(5), which permits the curing of defaults and the maintenance of payments on claims on which the last payment is due after the date the last payment is due under the plan.

**9.** *Id.*

10. In Chapter 12 cases, it is not uncommon for long term debt to be restructured so that it involves a payout of 25 or 30 years. The Chapter 12 plan, however, is limited to no more than five years. *See* § 1222(c).

of such claim, with a current value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in the property.[11]

■ In both Chapters 12 and 13, a plan may be confirmed in the absence of acceptance of the plan by the holder of an allowed secured claim, if the plan provides that the holder of the claim retains the lien securing the claim and the present value, at the effective date of the plan, of property to be distributed on account of the claim is not less than the allowed amount of the claim.[12]

The extension of *Dewsnup* to the rehabilitative chapters of the Code would, in this court's view, serve to defeat one of the primary purposes of those chapters—to permit debtors, through periodic payments under a plan, out of post-petition income, to financially rehabilitate themselves, their lives and their businesses. The survival of all liens would preclude the finality necessary to the success of such rehabilitative efforts, and would render § 506(a) virtually meaningless in those cases.

This court accepts the invitation of the Supreme Court to limit the application of *Dewsnup* to the facts upon which it was decided. This court thus holds that a creditor's lien, to the extent that it secures the unsecured portion of a claim, as determined under § 506(a), may be avoided, not under § 506(d), but under the terms of a confirmed Chapter 12 plan. There remains the question of when such avoidance should take place.

■ The analytical problem presented is complicated, in this court's view, by the fact that the word "discharge" has different meanings under the law in different situations.[13] Outside of bankruptcy, in connection with a contractual or other obligation, discharge occurs when the parties have performed their obligations under the contract or when the obligation has been paid or performed in full. In a strictly bankruptcy sense, on the other hand, discharge is the release of a debtor from further personal liability on his or her debts, save those excepted from discharge under the Code, whether or not any performance or payment has taken place.

Under § 1228, a Chapter 12 debtor is entitled to a bankruptcy discharge as soon as practicable after completion of all payments under the plan, other than, *inter alia,* payments to holders of allowed claims provided for under § 1222(b)(5).[14] The discharge would encompass debts provided for under the plan, and certain other debts, except debts provided for under § 1222(b)(5). In other words, the discharge granted to a debtor who has made all required payments during the term of the plan will not discharge debtor with regard to the debt upon which payments remain to be made after the conclusion of the plan. As to any such debt, it appears that no discharge, in the bankruptcy sense, would ever be granted, although the debt could be discharged in the contractual sense by subsequently being paid in full, forgiven, released or the like.

In many, if not most cases, secured claims provided for under § 1222(b)(5) would not be paid in full until many years after the debtors received their discharge, the bankruptcy case was closed, and the jurisdiction of the bankruptcy court was terminated. With regard to those debts, the parties are left to their State law rights and remedies after the conclusion of the bankruptcy proceeding.

## CONCLUSION

■ This court believes that the *Kinder* court was correct in denying debtors' request for an order voiding the lien securing the unsecured portion of the claim, effective at confirmation. The personal liability of debtors for the unsecured portion of the debt would remain intact until the entry of their discharge, which would not occur, except in rare instances, unless and until they

---

11. Section 1129(b)(2)(A).

12. *See* §§ 1225(a)(5)(B) and 1325(a)(5)(B).

13. *See* Black's Law Dictionary, 463–64 (6th ed. 1990).

14. See note 8, *supra.*

had successfully completed their plan. To void the lien securing that portion of the debt before completion of the plan and the entry of discharge to debtors would serve no purpose whatever. In addition, as the creditor in *Kinder* asserted, since all property of the estate would be vested in debtors at confirmation, such action would invite mischief, or at the very least future problems in connection with the property, and the creditor's interest in it.

■ Based upon the foregoing discussion, this court is of the further opinion that debtors herein are entitled to the avoidance of the lien securing the unsecured portion of the claim of FSB, but that such avoidance should not be effective until debtors have been granted a discharge in accordance with § 1228(a).

Debtors shall prepare and submit for execution a confirmation order consistent with the determination contained in this order within ten days of the date hereof.

IT IS SO ORDERED.