**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re:  KENNETH RODERICK
ANDERSON,

Debtor.

_____

KENNETH RODERICK ANDERSON,

                Appellant,

v.

DAVID C. WEST, Chapter 7 Trustee;
WASHINGTON COUNTY WATER
CONSERVANCY DISTRICT; UNITED
STATES TRUSTEE OFFICE; LEE
TRUST AND LOWNEY TRUST,

                Appellees.

No. 13-4063
(D.C. Nos. 2:12-CV-01205-CW,
2:12-CV-01206-CW,
2:12-CV-1207-CW,
2:12-CV-01208-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

_____

[*] This order and judgment is an unpublished decision, not binding precedent.  10th Cir. R. 32.1(A).  Citation to unpublished decisions is not prohibited.  Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation ‒ (unpublished).  *Id*.

In this bankruptcy case the Chapter 7 Trustee abandoned estate real property known as the Pah Tempe Hot Springs Resort (the Property).[1] It was subsequently sold in state court foreclosure proceedings. Even though the abandonment returned the Property to him, the Debtor, Kenneth R. Anderson, who owned the Property,[2] objected to it. He did not, however, request a stay of the abandonment or of the foreclosure sale. The bankruptcy judge concluded the abandonment and sale of the Property rendered this matter moot. The district court affirmed the abandonment of the Property on the merits but did not address the jurisdictional issue of mootness. Because the case is, indeed, moot, we vacate the district court's judgment and remand with instructions for it to dismiss the appeal from the bankruptcy court for want of jurisdiction. We also dismiss this appeal.

---

[1] The property abandoned by the Trustee did not include water shares and water delivery contracts associated therewith. The notice of abandonment described the property to be abandoned as:

> The Pah Tempe Hot Springs Resort—approximately 215 acres and improvements—Parcel Nos. 3313-B-HV, 3407-B-1-HV, 3407-A-HV, LV-42-J, LV-42-A-1, LV-163, LV-42-H, *but not including approximately 27.92 primary shares in the Hurricane Canal Co., approximately 3.432 secondary shares in the Hurricane Canal Co., and approximately 8.0 equivalent shares of water delivery contracts with LaVerkin City.*

(Appellant's App'x, Vol. 1 at 32.) Since the water shares and water delivery contracts remained part of the bankruptcy estate, they are irrelevant to the jurisdictional issue.

[2] Throughout this appeal all parties refer to Anderson as the owner.

# I. Background

*A. The Settlement Agreement*

Anderson owned and operated the Pah Tempe Hot Springs Resort (Property) in Washington County, Utah, where bathers would come to soak in the Property's naturally flowing hot springs. He also lived on the Property. Traversing the Property was a water pipeline located in an easement owned by the County's Water Conservancy District (District). Conflict arose between the District and Anderson—the District claimed the salt-laden hot springs polluted the nearby Virgin River and Anderson claimed the District's pipeline disrupted the flow of the hot springs to the detriment of the resort's business. A lawsuit ensued. The parties reached a Settlement Agreement in early 2006. Relevant here, the Settlement Agreement outlined the legal rights of each party in the Property. Anderson also promised to undertake expensive improvements to the Property to increase the flow of the hot springs; this obligation extended to subsequent purchasers.

*B. The Loans from the Family Trusts*

Between February 5 and May 6, 2008, the Lee and Lowney Family Trusts (the Family Trusts) made three loans to Anderson totaling $1,004,000. Each loan was evidenced by a promissory note and a deed of trust pledging the Property as collateral (subject to the District's rights). Each of the promissory notes required monthly payments for five years.

Anderson soon became delinquent in making the monthly payments. At his urging, the parties modified the notes, making them payable in full one year later (on November 1, 2009). When Anderson did not pay, the Family Trusts issued a notice of

default to Anderson and initiated state court foreclosure proceedings. A foreclosure sale was set. However, on the eve of the sale, Anderson filed a bankruptcy petition resulting in an automatic stay of all proceedings, including the foreclosure sale. *See* 11 U.S.C. § 362(a).

*C. The Bankruptcy Proceedings and Sale of the Property*

Anderson initially filed for bankruptcy relief under Chapter 11[3] and, as debtor in possession, successfully moved to assume the Settlement Agreement.[4] *See* 11 U.S.C. § 365. Upon a motion by the Family Trusts, the case was converted to a Chapter 7 proceeding, *see* 11 U.S.C. § 1112(b), changing the proceedings from a reorganization to a liquidation. *See In re C.W. Mining Co.*, 740 F.3d 548, 553 (10th Cir. 2014). A Trustee was appointed.

The Trustee determined the Property "to be burdensome and of inconsequential value to the estate" and provided notice of his intent to abandon the Property under 11 U.S.C. § 554(a) and Fed. R. Bankr. P. 6007(a). (Appellant's App'x, Vol. 1 at 32.) His reasoning: he had listed the Property with a broker to sell, but no purchase offers were

---

[3] While in Chapter 11, Anderson tried to render the Property profitable by installing a zipline; his efforts failed.

[4] 11 U.S.C. § 365 allows a trustee or debtor in possession to assume or reject an executory contract. *Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n*, 826 F.2d 434, 436 (6th Cir. 1987). "The statutory purpose of [§] 365 . . . is to enable the trustee to assume those executory obligations which are beneficial to the estate while rejecting those which are onerous or burdensome to perform." *Id*. A rejection generally constitutes a breach of the contract. *See* 11 U.S.C. § 365(g); *see also Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. IML Freight, Inc.*, 789 F.2d 1460, 1463 (10th Cir. 1986).

received by the broker. While the Property was listed, the Trustee directly negotiated with the District about a purchase. The District offered $1.54 million and had commissioned an appraisal, which valued the Property at $1.49 million.[5] But, since the liens exceeded the appraisals by several hundred thousand dollars, the Trustee did not consider the Property of value to the bankruptcy estate.

Anderson objected to the notice of abandonment.[6] Apparently wanting the Property to remain subject to the bankruptcy (and to enjoy the benefits of the automatic stay), he complained that the Trustee's notice, first given at the Meeting of Creditors, was inadequate. He also claimed to be entitled to an evidentiary hearing under 11 U.S.C. § 554. At bottom, he questioned the Trustee's decision to abandon the Property, contending it could be made valuable to the bankruptcy estate by extracting the rare earth elements allegedly present in the spring waters.[7] He also wanted the Trustee to litigate with the District over the terms of the Settlement Agreement, which litigation would, in his view, remove the District's claims as a cloud on the Property's title, thereby

---

[5] The appraisal included some of the water shares which were not being abandoned (*see supra* n.1) and did not consider the Settlement Agreement, which required Anderson (or any subsequent owner) to make costly improvements to the Property.

[6] Even though abandonment removes property from the bankruptcy estate and returns it to the debtor, see *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd*, 502 U.S. 410 (1992), Anderson objected. His objection was not timely under Fed. R. Bankr. P. 6007(a) and 9006(a), but no one complained.

[7] Anderson made some superficial effort to determine if such a venture could reap a profit. Nothing came of it. Why he thinks it reasonable for the Trustee to pick up that cudgel to beat a dead horse is baffling.

increasing its value.

Without holding an evidentiary hearing,[8] the bankruptcy judge allowed the abandonment. Anderson filed a timely motion to reconsider, but never sought to stay the abandonment.

Relieved of the automatic stay with respect to the Property, *see* 11 U.S.C. § 362(c), the Family Trusts continued their foreclosure efforts in state court. The foreclosure sale, pretermitted by the stay, was reset to November 8, 2012, and notice of the sale was provided to Anderson. The Family Trusts purchased the Property at the foreclosure sale; there were no other bids.[9] Although Anderson was represented by counsel and personally attended the sale, he did not move to stay or otherwise challenge the foreclosure proceedings in state court. Instead, <u>after</u> the Property was sold to the Family Trusts, he filed an emergency motion with the bankruptcy court seeking to extend/impose the automatic stay. In the motion, he sought to invalidate the foreclosure

---

[8] The bankruptcy judge had scheduled an evidentiary hearing but conditioned the holding of the hearing on Anderson obtaining, among other things, property insurance with a minimum coverage of $1.8 million (the amount owed to the Family Trusts). When Anderson obtained only $405,000 in property insurance, the judge vacated the scheduled evidentiary hearing.

[9] The documents evidencing the loans from the Family Trusts to Anderson included as collateral 30.92 water shares in the Hurricane Canal Company and 8.0 equivalent shares of water delivery contracts with LaVerkin City, neither of which was abandoned by the Trustee. *See supra* n.1. According to the Trustee, the Family Trusts did not obtain a lien on these water interests and, even if a lien existed, they failed to perfect their interest in them. It does not appear the water shares or delivery contracts were part of any subsequent conveyance either when the Family Trusts purchased the Property at the foreclosure sale or when the Family Trusts later sold it to the District. In any event, we are only concerned with the abandoned property; what the Family Trusts bought or sold during and after the foreclosure proceedings is irrelevant.

sale and to stop the Family Trusts' efforts to evict him from the Property.[10]

The bankruptcy judge denied Anderson's motion to reconsider as well as his emergency motion to extend/impose automatic stay. He also dismissed the adversary proceeding Anderson had initiated against the Trustee and the District in an attempt to prevent the Trustee from separating the water shares and water delivery contracts from the Property (thereby devaluing the Property) (*see supra* n.1) and to have the Settlement Agreement declared invalid and thus removed as a cloud on the Property's title. The judge concluded the matter was moot because the bankruptcy court could no longer provide meaningful relief after the Property had been abandoned and sold. He also determined Anderson lacked standing to challenge the abandonment because the abandonment returned the Property to him and thus he suffered no injury. The Family Shares eventually sold the Property to the District.

*D. The Appeal to the District Court*

Anderson appealed to the district court for relief.[11] *See* 28 U.S.C. § 158(a)(1), (c)(1), Fed. R. Bankr. P. 8005(a) (formerly Fed. R. Bankr. P. 8001(e)). The district judge

---

[10] Nothing in the record suggests Anderson exercised his rights to redeem the Property under Utah law. *See* Utah R. Civ. P. 69C. But, because he refused to leave the Property after the sale, the Family Trusts initiated a state court proceeding to evict him, as permitted by Utah law. *See* Utah Code Ann. §§ 78B-6-801-816. We mention these matters only to provide context; Utah foreclosure law is not a matter of our concern.

[11] Anderson filed four separate appeals challenging the bankruptcy judge's (1) denial of his motion for reconsideration, (2) denial of his emergency motion to extend/impose automatic stay; (3) grant of the Trustee's motion to dismiss the adversary proceeding; and (4) grant of the District's motion to dismiss the adversary proceeding. The appeals were consolidated.

thought Anderson should have received an evidentiary hearing on the abandonment issue. But, after allowing the parties to proffer evidence, he ultimately determined any error in failing to hold the hearing was harmless. He affirmed the bankruptcy court's decision allowing abandonment of the Property without direct mention of the jurisdictional concerns.

## II. Discussion

Anderson wants us to remand the case to the bankruptcy court for a hearing on the Property's value and for interpretation of the Settlement Agreement. The Trustee, the District, and the Family Trusts (hereinafter Appellees) think this court lacks jurisdiction because the salient issues are moot.

Mootness is a jurisdictional issue to be decided at the threshold. *See Golfland Entm't Ctrs., Inc. v. Peak Inv., Inc. (In re BCD Corp.)*, 119 F.3d 852, 856 (10th Cir. 1997). "Our consideration of this issue is de novo." *Dais-Naid, Inc. v. Phoenix Res. Cos. (In re Texas Int'l Corp.)*, 974 F.2d 1246, 1247 (10th Cir. 1992).

The Constitution gives federal courts the power to adjudicate only "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot . . . when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, --- U.S. ---, 132 S. Ct. 2277, 2287 (2012) (quotations omitted).

*In re Egbert Development* informs the debate. In that case the bankruptcy court issued an order terminating the automatic stay in order for a secured creditor to foreclose on the debtor's property. *See Egbert Dev., LLC v. Cmty. First Nat'l Bank (In re Egbert Dev., LLC)*, 219 B.R. 903, 905 (10th Cir. BAP 1998). The debtor appealed from the order but did not seek a stay pending appeal. *Id.* The property was sold in a foreclosure sale. *Id.* The Bankruptcy Appellate Panel (BAP) concluded the debtor's appeal was moot. *Id.* at 906. Because the debtor failed to obtain a stay pending appeal, the creditor was entitled to treat the bankruptcy court's order lifting the stay as final and to take action in reliance upon it. *Id.* The BAP concluded it was powerless to rescind the foreclosure sale on appeal and reinstatement of the stay would be meaningless given that the sale had already occurred. *Id.* Thus, it concluded, even if it reversed the bankruptcy court's order lifting the stay, it could grant no effective relief. *Id.*

In concluding the case was moot, the BAP relied on the well-established rule "that an appeal will be dismissed as moot if a debtor fails to obtain a stay pending appeal of a bankruptcy court order granting relief from the automatic stay and the moving creditor subsequently conducts a foreclosure sale, as the appellate court cannot grant any effective relief." *See id.* at 905 (collecting cases). The rule is "intended to provide finality to orders of bankruptcy courts and to protect the integrity of the judicial sale process upon which good faith purchasers rely." *Id.* at 905-06 (quotations omitted). "More importantly, it serves to insure the integrity of judicial mootness doctrines that the

occurrence of events which prevent an appellate court from granting effective relief

renders an appeal moot."[12]  *Id.* at 906 (quotations omitted).

　　We agree with the BAP's decision in *Egbert* and extend its sound reasoning to the

circumstances presented here.  Although *Egbert* involved lifting the automatic stay, in the

context of this case we see no reasoned distinction between lifting the stay (allowing

collection efforts to continue) and abandoning property (severing it from the bankruptcy

estate, returning it to the debtor, and permitting collection efforts to continue).  *See*

*Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990) (stating

abandoned property is no longer part of the bankruptcy estate), *aff'd*, 502 U.S. 410

(1992); *see also* 11 U.S.C. § 362(c) (automatic stay "of an act against property of the

---

[12] The Ninth Circuit once recognized an exception to the mootness rule where, like here, real property is sold to a creditor who is a party to the appeal.  *Sun Valley Ranches, Inc. v. The Equitable Life Assurance Soc'y of the United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1375 (9th Cir. 1987).  It reasoned that where the buyer is before the court, "it would not be impossible for the Court to fashion some sort of relief." *Id.* (quotations omitted).  However, the next year, the court, stressing the need for finality, circumscribed the exception to cases (like *Sun Valley Ranches*) where the debtor has a statutory right of redemption.  *See Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172-73 (9th Cir. 1988).  In noting other circuits had not permitted an exception for purchaser-parties, the *Onouli-Kona* court relied on our decision in *Tompkins v. Frey (In re Bel Air Assocs., Ltd.),* 706 F.2d 301 (10th Cir. 1983). *Id.* at 1173.  Unfortunately, *Bel Air Associates* relied on a bankruptcy rule that has since been repealed.  706 F.2d at 304-05 & n.10.  While that rule was later codified in part in 11 U.S.C. § 363(m), that statute, by its terms, does not apply to state-law foreclosure sales.  *See In re Egbert,* 219 B.R. at 908 (citing *Sullivan Cent. Plaza, I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza, I, Ltd.)*, 914 F.2d 731, 734-35 (5th Cir. 1990), and *Sewanee Land, Coal & Cattle, Inc. v. Lamb (In re Sewanee Land, Coal & Cattle, Inc.)*, 735 F.2d 1294, 1296 n.2 (11th Cir. 1984)).  In any event, we need not rely on any particular statute or rule; this case is moot under constitutional and judicial mootness principles.

estate . . . continues until such property is no longer property of the estate"). Whether property is abandoned or the automatic stay is lifted the property is beyond the control of the bankruptcy court. Equally important, in either case the relevant order is immediately operative; the bankruptcy code does not provide a reach back remedy for the less than diligent; doing so could unjustifiably interfere with the rights of bona fide purchasers.

We do not consider Anderson's contrary arguments persuasive. First, he suggests there are other remedies available which do not depend on the propriety of the foreclosure sale. He asks us to remand to the bankruptcy court and instruct it to interpret the Settlement Agreement and hold an evidentiary hearing to determine the Property's value. According to him, the bankruptcy court has jurisdiction over the Settlement Agreement because it was assumed and never abandoned.[13] But even if the Settlement Agreement were to be interpreted in Anderson's favor and the Property valued for more, that would not retroactively impeach the validity of the foreclosure sale. Anderson claims removing the Settlement Agreement as a cloud on the Property's title will benefit the bankruptcy estate enabling his creditors to enjoy the full value of the Property. Noble as that sounds, at least superficially, it is unavailing. Bankrupts, as others, have an obligation to protect their claims and by failing to seek a stay of the abandonment, Anderson allowed the Property to be sold, putting it beyond the reach of the bankruptcy court. *See In re Dewsnup*, 908 F.2d at 590; *Gardner v. United States (In re Gardner)*,

---

[13] Anderson also suggests we cannot know what Property was abandoned without interpreting the Settlement Agreement. But we do know—the Pah Tempe Hot Springs Resort minus the water shares and water delivery contracts. *See supra* n.1.

913 F.2d 1515, 1518 (10th Cir. 1990).  Without the Property, the bankruptcy court, the

district court, and this court can afford no effective or meaningful relief.[14]

Second, Anderson claims the abandonment was not final until the bankruptcy

judge denied his motion to reconsider on December 12, 2012, and therefore the

foreclosure sale occurring on November 8, 2012, was invalid.[15]  Not so.  The bankruptcy

judge's order declaring the Property abandoned was signed on August 17 and filed on

August 20, 2012, well before the foreclosure sale.  Anderson's motion for reconsideration

of the abandonment order only extended the time for him to appeal from that order, *see*

Fed. R. Bankr. P. 8002(b).  Anderson cites to no authority, and we have found none,

supporting the proposition that a motion to reconsider stays the effectiveness or operation

---

[14] We have recognized an exception to the mootness rule when there is a possibility of equitable relief, such as a constructive trust over the sale proceeds.  *See, e.g.*, *In re BCD Corp.*, 119 F.3d at 856-57; *see also Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203-04, 1210 (10th Cir. 1994), *abrogated in part on other grounds by Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007). Anderson has not claimed any right to equitable relief or to the sale proceeds.  Indeed, in both *BCD* and *Osborn*, either the Trustee or the debtor in possession sold the property; thus, the sale proceeds became part of the bankruptcy estate for distribution.  *See In re BCD Corp.*, 119 F.3d at 854-57; *In re Osborn*, 24 F.3d at 1202.  In contrast, the Property in this case was removed from the bankruptcy estate by abandonment and sold by a creditor; the sale proceeds are not part of the bankruptcy estate and any excess proceeds would go to Anderson.

[15] Other than claiming the foreclosure sale was invalid because it occurred before the abandonment order was rendered final by the bankruptcy judge's denial of his motion to reconsider, Anderson does not challenge the validity of the sale.  *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) ("We deem, as the law has always deemed, that a fair and proper price . . . for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.").

of the subject order;[16] only a stay does so, but one was not requested.

Next, Anderson argues that even if he was required to request a stay, he did request a stay pending appeal, albeit unsuccessfully, before the bankruptcy court, district court, and this court. Not only were the requests denied, they were of no consequence because they occurred <u>after</u> the Property had already been sold in the foreclosure proceedings. So too, his emergency motion to extend/impose the automatic stay was not filed until <u>after</u> the Property had been sold. Anderson does not claim to have requested a stay of the abandonment order prior to the foreclosure sale and the record reveals none. An untimely stay request is futile.

Finally, Anderson argues we have jurisdiction because the district court took jurisdiction and made a merits decision. Indeed we have jurisdiction to review the district court's acts, but at this late stage our jurisdiction is limited to determining whether the bankruptcy court or the district court could consider a controversy rendered moot by time and circumstances. Neither could do so. *In re Texas Int'l Corp.*, 974 F.2d at 1247 ("[T]he existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts.") (quotations omitted). The bankruptcy court correctly concluded as much. The district court affirmed "the Bankruptcy Court's

---

[16] Anderson filed his motion to reconsider pursuant to Rules 7052, 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, which in turn apply Rules 52, 59 and 60 of the Federal Rules of Civil Procedure, respectively. Rule 60(c)(2) provides that a motion for relief from a final judgment, order or proceeding "does not affect the judgment's finality or suspend its operation." Because no similar provision is present in Rule 52 or 59, it could be inferred that motions under Rule 52 or 59 do suspend the operation of the underlying order or judgment. But we have found no supporting case law.

decision to allow abandonment of the . . . [P]roperty." (Appellees' Supp. App'x, Vol. 1 at 14.) But it should have dismissed the appeal from the bankruptcy court for lack of jurisdiction. *See City Ctr. W., L.P. v. Am. Modern Home Ins. Co.*, 749 F.3d 912, 913-14 (10th Cir. 2014) ("Mooted cases must be dismissed for lack of jurisdiction."); *see also Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) ("The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.").

We **DISMISS** this appeal for lack of jurisdiction and **REMAND** to the district court and instruct it to vacate its judgment and dismiss the appeal from the bankruptcy court for lack of jurisdiction. We **GRANT** Appellee Washington County Water Conservancy District's Motion for Summary Disposition. *See* 10th Cir. R. 27.2.


**Entered by the Court:**


**Terrence L. O'Brien**
United States Circuit Judge

- 14 -